IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:23-cv-625

| | | |
|---|---|---|
| ERIC GOOLSBY and HEATHER GOOLSBY,*individually and on behalf of themselves and all others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT (JURY TRIAL DEMANDED)** |
| WANABANA LLC and WANABANA USA LLC, | ) ) ) | |
| Defendants. | ) ) | |

## <u>INTRODUCTION</u>

1.  Plaintiffs Eric Goolsby and Heather Goolsby ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants WanaBana LLC and WanaBana USA LLC ("Defendants") for Defendants' reckless, and/or intentional practice of failing to disclose the presence of lead and other toxic heavy metals (collectively "Heavy Metals") in their apple sauce and fruit puree pouches, including the WanaBana Apple Cinnamon Fruit Puree, among others (the "Products").[1]

2.  This action seeks both injunctive and monetary relief on behalf of the proposed Classes as defined herein, including requiring full disclosure of all such substances on the Products' packaging and restoring monies to the members of the proposed Classes, who would not have purchased the Products had they known they contained (or were at risk of containing) the Heavy Metals and/or would not have paid premium prices for the Products had they known the Products contain Heavy Metals like lead.

3.  Plaintiffs allege the following based upon personal knowledge, as well as investigation by their counsel as to themselves, and as to all other matters, upon information and belief. Plaintiffs believe substantial evidentiary support exists for the allegations set forth herein, which will become available after a reasonable opportunity for discovery.

---

[1] Plaintiffs are not alleging nor are they seeking damages for any personal injuries to themselves, their Minor Child (as defined below), or putative class members. Those claims are being excluded from this Complaint. Plaintiffs retain the right to seek personal injury damages resulting from the lead exposure caused by Defendants at a later date.

## <u>NATURE OF THE ACTION</u>

**4.**     Defendants makes specific representations to consumers that their fruit pouches are high-quality, healthy, and safe products for consumers, including Plaintiffs, to choose for their children, including that they are "[t]he ideal snack for the whole family." WanaBana, *Homepage*, https://wanabana.com (last visited Oct. 31, 2023) (*see* below).



**5.**     The product's selected slogan, "I AM ONLY FRUIT" (*see* below), is used by Defendants to impart the feeling that parents are giving their children a premium, healthy fruit puree pouch. *See generally* WanaBana, *Fruit Pouch*, https://wanabana.com/fruit-pouch/ (last visited Oct. 31, 2023).





**6.** Defendants used the same slogan with the same effect on the "apple cinnamon" flavor pouches purchased by Plaintiffs and ingested by their infant daughter (*see* below).



**7.** Consumers, including Plaintiffs, trust manufacturers like Defendants to sell only products that are safe for themselves and their children, and to sell only products that do not contain or have a material risk of containing Heavy Metals like lead.

**8.** Reasonable consumers, including Plaintiffs, expect the fruit puree products they purchase for their individual and family consumption will not be contaminated or have a material risk of being contaminated with Heavy Metals like lead, substances that are known to accumulate in the body and pose significant and dangerous health consequences.

**9.** Product contents, particularly contents such as Heavy Metals like lead, are material to a reasonable consumer's purchasing decisions.

**10.** Consumers lack the scientific knowledge necessary to determine whether Defendants' Products do in fact contain Heavy Metals like lead, or to ascertain the true nature of the

ingredients and quality of the Products. Accordingly, reasonable consumers must and do rely on each Defendants to: (1) know what their Products contain; (2) regularly test the Products to confirm their compositions; and (3) properly and fully disclose those contents to consumers prior to purchase.

11. Upon information and belief, each Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products throughout the United States, including in this District.

12. Upon information and belief, each Defendant is equally responsible for the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products throughout the United States, including in this District.

13. Each Defendant failed to disclose on its packaging that the Products contain or have a material risk of containing Heavy Metals like lead.

14. No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing Heavy Metals like lead.

15. Defendants tout on their website the safety and quality of the Products. For example, at the bottom of the WanaBana homepage (*see* below), Defendants display seven certification seals[2] followed by the statements "We have certifications that guarantee the excellence of our food processes," and "Ensuring a product with worldwide safety and quality."



WanaBana, *Homepage*, https://wanabana.com (last visited Oct. 31, 2023).

16. Further, on the website's "Our Story" page, Defendants state:

> We are committed to satisfying our consumers and exceeding the expectations of our customers through the elaboration of products derived from fresh fruits that meet quality, safety, legality, and authenticity parameters focused on continuous improvement in our [business process] management systems…and nationally and internationally recognized quality standards.

---

[2] *From left*: the Orthodox Union, certified Kosher; the Business Alliance for Secure Commerce, certified compliant; the National Sanitation Foundation, certified Good Manufacturing Practice; the British Retail Consortium Global Standards, certified compliant; and certified organic by the European Union, the U.S. Dep't of Agriculture, and Quality Certification Services – Ecuador.

Case 5:23-cv-00625-D-KS   Document 1   Filed 10/31/23   Page 4 of 24

To achieve this, we have a team of highly qualified people, controlled processes, and a food safety management system which allows us to guarantee the safety of our products and a continuous improvement of our processes, as well as the prevention of illegal activities, corruption, and bribe.

WanaBana, *Our Story*, https://wanabana.com/about-us (last visited Oct. 30, 2023).

17. Defendants go on to reiterate that their products are safe and high-quality throughout the "Our Story" webpage, ending with the representation that their "products not only maintain the fruit's organoleptic and nutritional characteristics, but [they] also carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year." *Id*.

18. The "Our Story" page also includes the following in bold, capital letters at the very top of the webpage: **INTEGRATED QUALITY, SAFETY, CONTROL AND SECURITY MANAGEMENT POLICY BASC [STANDARDS].** *Id*.

19. The statements above also appear in marketing materials and labeling in stores through which the Products are distributed.

20. However, contrary to Defendants' assurances that its Products are manufactured under strict quality standards, the Products have been shown to contain detectable levels of Heavy Metals like lead which are known to pose human health risks.

21. Defendants failed to disclose to consumers that the Products contain or have a material risk of containing Heavy Metals like lead.

22. Nowhere on the Products' packaging is it disclosed that they contain or have a material risk of containing Heavy Metals like lead (collectively the "Omissions"). It was only through testing conducted by the Food and Drug Administration ("FDA") and the North Carolina Department of Health and Human Services ("NCDHHS") that the general public became aware of the Heavy Metal content in Defendants' Products.

23. Based on the Omissions, no reasonable consumer had any reason to know, suspect, or expect that the Products contained Heavy Metals like lead.

24. Reasonable consumers like Plaintiffs, who were purchasing the Products for consumption by themselves and their families, would consider the presence or risk of Heavy Metals like lead to be a material fact when considering whether to purchase the Products. Accordingly, Plaintiffs and other reasonable consumers would not have purchased the Products or would have paid substantially less for them but for the Omissions.

25. Defendants are aware that their customers trust the quality of their Products and would not expect the Products to contain or have a material risk of containing Heavy Metals.

Defendants also know that reasonable consumers, especially parents, seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.

26. Defendants further know that reasonable consumers would not knowingly consume, or feed to their families and children, products that contain Heavy Metals.

27. Defendants knew the consumers to whom it markets the Products would find their Omissions material and that they were in a special position of public trust to those consumers.

28. The Omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed Heavy Metals, including lead.

29. The Omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs who purchased the Products that omitted material information as to the Products' true quality and value.

30. Reasonable consumers, including Plaintiffs, paid more for the Products than they would have had they known the truth about the Products, and Defendants continue to wrongfully induce consumers to purchase the Products.

31. Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Classes (as defined *infra*), who, during the Class Period, purchased for use and not resale any of Defendants' Products.

## JURISDICTION AND VENUE

32. The foregoing allegations are incorporated by reference and realleged herein.

33. This Court has original jurisdiction over all causes of action under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and more than two-thirds of the Classes reside in states other than the state in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

34. This Court has personal jurisdiction over Defendants because they conduct and transact business in the state of North Carolina, and contracts to supply goods within the state of North Carolina, such that it has had continuous and systematic contacts with the state of North Carolina.

35. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs suffered injury as a result of Defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendants conduct substantial business in this District.

## PARTIES

36.     Plaintiffs Eric Goolsby and Heather Goolsby are a married couple who, at all relevant times, have been citizens and residents of North Carolina. Plaintiffs purchased the Products, including the WanaBana Apple Cinnamon Fruit Puree, from Dollar Tree Stores in Wake County, North Carolina.

37.     Plaintiffs first began purchasing the Products in early 2023. Plaintiffs last purchased these products shortly before learning about the issues with Heavy Metals like lead in the Products in October of 2023.

38.     Plaintiffs believed that they were purchasing a high-quality pureed fruit product from Defendants. Prior to purchasing the Products, Plaintiffs saw and relied upon the packaging of the Products. During the time Plaintiffs purchased and provided the Products to their infant daughter, and due to the Omissions by Defendant, they were unaware that the Products contained or had a material risk of containing any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Products if that information had been fully disclosed.

39.     Defendants are both national companies headquartered in Florida. Defendants are involved in the production, marketing, distribution, and sale of a variety of pureed fruit products throughout North Carolina and the United States.

40.     During the relevant time, Defendants controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of their Products. Defendants therefore had control over how to label their Products as to their contents.

41.     Defendants have each been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the WanaBana name throughout the United States, including in this District. It has done so continuously throughout the Class Period. Defendants knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Products that did not disclose the presence of Heavy Metals like lead. Defendants are also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished products.

42.     Plaintiffs relied upon the material Omissions from the Products' packaging, which was prepared, reviewed, and/or approved by Defendants and their agents and disseminated by Defendants and their agents through packaging that contained the Omissions. The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Products.

## FACTUAL ALLEGATIONS

### A. Plaintiffs' Infant Daughter was Tested for Lead Poisoning.

43.     At a regularly scheduled checkup for Plaintiff's infant daughter (the "Minor Child") at Duke Primary Care, she was tested for lead exposure as part of a mandatory program to test one-year-old children. The test revealed that she had levels of lead at a 20.0 mcg/dL. A normal testing should be less than 3.5 mcg/dL.

44.     Plaintiffs were understandably terrified by the levels of lead in their daughter's body.

45.     Whenever a child is determined to have lead levels in excess of 5 mcg/dL, the Human and Health Services department is alerted and becomes involved.

46.     The Wake County Health and Human Services ("Wake HHS") conducted an intensive environmental study of Plaintiffs' home. Wake HHS came to Plaintiffs' home on multiple occasions to test the water, soil, air, clothing, paint, and vehicles to possible sources of the Minor Child's lead exposure. These tests did not reveal any potential sources of exposure.

47.     The Minor Child spends a substantial amount of time at the home of Plaintiff Eric Goolsby's parents in Franklin County, North Carolina. Because Wake HHS was unable to find the potential source of lead exposure, Wake HHS contacted Franklin County Health and Human Services to conduct an environmental study of this home. These tests also did not reveal any potential sources of exposure.

48.     For months the Plaintiffs were panicked, scared, worried, and confused about what could be the source of the Minor Child's lead exposure.

### B. U.S. Food and Drug Administration Demonstrates the Presence of Heavy Metals in the Products.

49.     On October 30, 2023, Plaintiffs became aware of the FDA's public health alert that the Products contained elevated levels of lead (the "FDA Alert"). FDA, *FDA Advises Parents and Caregivers Not to Buy or Feed WanaBana Apple Cinnamon Fruit Puree Pouches to Toddlers and Young Children Because of Elevated Lead Levels*, https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-parents-and-caregivers-not-buy-or-feed-wanabana-apple-cinnamon-fruit-puree-pouches, Oct. 30, 2023 (last visited Oct. 30, 2023).

50.     In fact, the FDA Alert was prompted by the NCDHHS investigation[3] regarding four children in North Carolina that were found to have high levels of lead in their blood linked to the puree products. *Id.*

---

[3] NCDHHS, *NCDHHS Urges Caution After Reportable Lead Found in WanaBana Brand Apple Cinnamon Puree*, https://www.ncdhhs.gov/news/press-releases/2023/10/28/ncdhhs-urges-caution-after-reportable-lead-found-wanabana-brand-apple-cinnamon-puree, Oct. 28, 2023 (last visited Oct. 30, 2023) (the "NCDHHS Statement").

51. According to the FDA Alert, NCDHHS officials analyzed multiple lots of the product and detected "extremely high" concentrations of lead. The FDA confirmed the results and said they could lead to "acute toxicity." *Id*.

52. "As part of their investigation, NCDHHS analyzed multiple lots of WanaBana apple cinnamon fruit puree, detecting extremely high concentrations of lead." *Id*.

53. "The FDA has reviewed and supports NCDHHS's analytical findings and found that analytical results at this level could result in acute toxicity," and "has shared the results with [Defendants] whose representatives are cooperating with the FDA and have agreed to voluntarily recall all WanaBana apple cinnamon fruit puree pouches regardless of expiration." *Id*.

54. The FDA and the NCDHHS, along with the North Carolina Department of Agriculture & Consumer Services, analyzed various samples of the Products to determine that these products are dangerous and contaminated. *Id*.

55. The FDA identified and confirmed that there are serious health implications arising from lead exposure and toxicity. *Id*.

56. After reviewing this warning, Plaintiffs immediately knew that this was the source of their Minor Child's lead exposure—Plaintiffs provided dozens of fruit puree pouches of Defendants' Products to their Minor Child as a direct result of Defendants' marketing efforts and omissions.

### C. Defendants Omit Any Mention of Heavy Metals on Their Packaging.

57. Defendants manufacture, design, test, package, label, market, advertise, promote, distribute, and sell their Products throughout the United States, including in North Carolina.

58. Defendants' Products are available at numerous retail and online outlets throughout the United States, including North Carolina.

59. Defendants tout their commitment to "quality, safety, sustainable resource management and social responsibility," and further claim to "have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes," stating they "carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year." WanaBana, *Our Story*, https://wanabana.com/about-us (last visited Oct. 30, 2023).

60. However, inconsistent with such assertions about the quality of their products and their manufacturing processes, Defendants know or should know that the Products contain or

have a material risk of containing Heavy Metals including lead, yet failed to disclose this fact to consumers.[4]

61.     Defendants intentionally omitted the presence or material risk of Heavy Metals like lead in the Products to induce and mislead reasonable consumers to purchase the Products and pay a premium price for them.

62.     As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence of or material risk of Heavy Metals like lead in the Products without conducting their own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of the Products.

63.     Information regarding the true nature and/or presence of Heavy Metals like lead in the Products was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of Heavy Metals like lead in the Products from Plaintiffs and Class members.

   **D.  Due to the Presence and/or Material Risk of the Presence of Heavy Metals in the Products, the Omissions are Misleading.**

64.     Lead is a heavy metal whose harmful effects are well-documented, particularly in children. Exposure to heavy metals, particularly lead, puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues. Heavy Metals like lead also pose health risks to adults. Even modest amounts of Heavy Metals like lead can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions. These facts underscore the importance of limiting heavy metal exposure and consumption.

65.     Given the negative effects of heavy metals, including lead, on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs and members of the Classes, as it relates to their purchasing decisions.

66.     Defendants know that the presence (or material risk) of Heavy Metals, including lead, in their Products is material to reasonable consumers, including Plaintiffs and the Class members.

67.     At all times during the relevant period, Defendants knew or should have known the Products included undisclosed levels of Heavy Metals and were not sufficiently tested for the presence and material risk of Heavy Metals like lead.

---

[4] On October 31, 2023, Defendants' website homepage was updated to include information about a "Voluntary Recall of WanaBana Apple Cinnamon Fruit Puree Pouches due to Elevated Lead Levels," which is back-dated to October 29, 2023. *See* WanaBana, *Homepage*, https://wanabana.com (last visited Oct. 31, 2023).

68. Based, in part, on Defendants' own representation that they manufactured the Products using the highest standards, Defendants knew or should have known consumers reasonably expect that the Products do not contain (or have a material risk of containing) Heavy Metals like lead.

69. Defendants' Products included undisclosed levels of Heavy Metals like lead, including lead, due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished products. Defendants were or should have been aware of this risk.

70. Concerns over exposure to Heavy Metals like lead, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of Heavy Metals like lead in foods they sell to consumers.

71. Defendants knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals like lead in the Products to the extent reasonably possible.

72. Defendants knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals like lead in the Products and the contributing ingredients.

73. The FDA and the World Health Organization ("WHO") have declared lead dangerous to human health. *See, e.g.,* U.S. House of Representatives Committee on Oversight and Reform, *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* at 2, (Feb. 4, 2021).[5]

74. The FDA has acknowledged that exposure is "likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals. FDA, *Environmental Contaminants in Food*, Jan. 24, 2023, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm.

75. The Products contain or have a material risk of containing lead, which is extremely toxic. WHO, *Lead Poisoning*, Aug. 11, 2023, https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

76. "Exposure to lead can affect multiple body systems" of all humans, but "is particularly harmful to young children and women of child-bearing age." *Id*.

77. "Once lead enters the body, it is distributed to organs such as the brain, kidneys, liver, and bones. The body stores lead in the teeth and bones, where it accumulates over time." *Id*.

78. No amount of lead is known to be safe, and its harmful effects cannot be reversed or remediated. *Id*.

---

[5] *See* https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

79. Exposure to lead by ingesting contaminated foods has been demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems. *Id*.

80. Moreover, "[y]oung children are particularly vulnerable to lead poisoning because they absorb 4–5 times as much ingested lead as adults from a given source." *Id*.

81. Exposure can seriously harm the brain and nervous system in children, and is associated with a range of negative health outcomes including behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth. Centers for Disease Control: Agency for Toxic Substances and Disease Registry, Division of Toxicology and Human Health Sciences, *ToxFAQs for Lead*, Aug. 7, 2020, https://www.atsdr.cdc.gov/toxfaqs/tfacts13.pdf.

82. Aside from being a probable human carcinogen, exposure to lead can result in neuropathy, brain damage, hypertension, decreased renal function, increased blood pressure, and gastrointestinal and cardiovascular effects, and can cause fetal death in pregnant women. *Id*.

### E. The Material Omissions Misled and Deceived Reasonable Consumers.

83. The popularity of applesauce and other pureed products are increasing rapidly across the world in everything from baby food to school lunches as consumers, especially parents like Plaintiffs, seek nutritious, appealing, and convenient foods for children.

84. The purported health benefits of applesauce puree are on full display on Defendants' packaging, as identified *infra*.

85. The Omissions wrongfully convey to consumers that Defendants' Products are of a superior quality and have certain characteristics that they do not actually possess.

86. Defendants' representations and omissions have caused consumers, including Plaintiffs, to believe their Products do not contain any harmful substances, when in fact the Products contain or have a material risk of containing undisclosed levels of Heavy Metals, including lead, which is material information to reasonable consumers, including Plaintiffs.

87. For example, the testing conducted by the NCDHHS identified:

> WanaBana apple cinnamon fruit puree pouches as a potential shared source of exposure following several cases of elevated blood lead levels in children in the western part of the state. As part of the investigation, NCDHHS analyzed multiple lots of the product, **detecting extremely high concentrations of lead.**

NCDHHS Statement (emphasis added).

88. Defendants wrongfully failed to disclose to consumers material information regarding the presence of (or material risk of) Heavy Metals like lead in the Products.

89. Due to the Omissions, reasonable consumers, including Plaintiffs, would not suspect the presence of Heavy Metals like lead in the Products. Defendants chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals like lead in the Products.

90. Unlike Defendant, reasonable consumers are generally without the means to conduct their own independent scientific tests or to review scientific testing conducted on the Products.

91. Moreover, information regarding the presence of Heavy Metals like lead in the Products is in the exclusive possession of Defendants and not available to consumers.

92. Instead, consumers must and do rely on Defendants to honestly report what their Products contain.

93. Based on the impression created by Defendants' Omissions that the Products contained Heavy Metals like lead on the packaging, no reasonable consumer would expect, suspect, or understand that the Products contained or had a material risk of containing Heavy Metals like lead.

94. Plaintiffs' expectations and reliance are consistent with reasonable consumers.

95. In light of Defendants' statements regarding the quality of the Products, Defendants knew or should have known the Products contained or had a material risk of containing Heavy Metals like lead.

96. Defendants had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

97. Defendants acted negligently, recklessly, unfairly, and/or intentionally with their deceptive packaging based on the Omissions.

98. Defendants knew that properly and sufficiently monitoring the Products for Heavy Metals like lead in the ingredients and finished products was critical.

99. In addition, Defendants knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of Heavy Metals like lead.

100. Defendants knew or should have known it could control the levels of Heavy Metals like lead in the Products by properly monitoring and testing for Heavy Metals like lead at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

101. The Omissions are material and reasonably likely to deceive reasonable consumers, like Plaintiffs, in their purchasing decisions, especially considering Defendants' long-standing "I AM ONLY FRUIT" slogan and campaign to market the Products as "a high quality product from its harvest to its end…not only maintain[ing] the fruit's organoleptic and nutritional characteristics, but also carry[ing] a production line with the highest standards in the market" for "quality, safety, sustainable resource management and social responsibility," as "evidenced in the certifications obtained year after year." WanaBana, *Our Story*, https://wanabana.com/about-us (last visited Oct. 30, 2023).

102. Such statements were made to induce reasonable consumers, such as Plaintiffs, to purchase the Products and/or to purchase the Products at a price premium.

103. The Omissions make the Products' packaging deceptive based on the presence or risk of Heavy Metals, including lead, in the Products. Reasonable consumers, like Plaintiffs, would consider the presence or risk of Heavy Metals like lead in the Products a material fact when considering which applesauce or other pureed products to purchase.

104. Defendants knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals like lead.

105. The Omissions and the representations on Defendants' website were misleading due to Defendants' failure to sufficiently or adequately monitor or test for and disclose the presence or material risk of Heavy Metals like lead in the Products.

106. Defendants knew or should have known that the Products contained or may contain undisclosed levels of Heavy Metals like lead that were not disclosed on the packaging.

107. Defendants knew or should have known that reasonable consumers expected Defendants to sufficiently monitor and test the Products and ingredients for Heavy Metals like lead to ensure the quality of the Products.

108. Defendants knew or should have known that reasonable consumers paid higher prices for the Products and expected Defendants to sufficiently test and monitor the Products and ingredients for the presence of Heavy Metals like lead.

109. The Omissions are material and render the Products' packaging and advertising deceptive because without full disclosure, reasonable consumers believe the Products are safe, high-quality products, that would not contain or have a material risk of containing Heavy Metals like lead.

110. The Omissions were intended to and did, in fact, cause consumers like Plaintiffs and the members of the Classes to purchase products they would not have if the true quality and ingredients were disclosed.

111. As a result of Defendants' Omissions, Defendants were able to generate substantial sales, which allowed Defendants to capitalize on, and reap enormous profits from, Plaintiffs and similarly situated consumers who purchased the Products.

112. Plaintiffs and other reasonable consumers would not have purchased the Products or would have paid less for them but for Defendants' Omissions concerning the presence or material risk of Heavy Metals like lead in the Products.

**F. Plaintiffs' Reliance Was Reasonable and Foreseeable by Defendant.**

113. Plaintiffs read and relied upon the packaging of the Products when making their purchasing decisions. Had they known Defendants omitted and failed to disclose the presence of Heavy Metals, including lead, on the Products' packaging, they would not have purchased the Products.

114. Reasonable consumers, like Plaintiffs, would consider the packaging of a product when considering and deciding whether to purchase that product.

**G. Defendants' Knowledge and Notice of Their Breach of Implied Warranties.**

115. Defendants had sufficient notice of their breach of implied warranties. Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the Products. Defendants also had and have exclusive knowledge of their suppliers, and whether any suppliers provided ingredients that contained Heavy Metals like lead.

116. Defendants were also put on notice by, *inter alia*, the FDA and NCDHHS reports that identified the presence of lead in Defendants' Products, as well as any communications regarding those ongoing investigations leading to the FDA and NCDHHS reports

117. Defendants have not changed their packaging to include any disclaimer that the Products contain, or are at risk of containing, Heavy Metals like lead.

**H. Privity Exists with Plaintiffs and the Proposed Classes.**

118. Defendants knew that reasonable consumers such as Plaintiffs and the proposed members of the Classes would be the end purchasers of the Products and the targets of their advertising, promotion, and labeling.

119. Defendants intended that the packaging and implied warranties would be considered by the end purchasers of the Products, including Plaintiffs and the proposed members of the Classes.

120. Defendants directly marketed to Plaintiffs and the proposed Classes through the Products' packaging and labeling.

121. Plaintiffs and the proposed members of the Classes are the intended beneficiaries of the implied warranties.

## FED. R. CIV. P. 9(b) ALLEGATIONS

122. Although Defendants are in the best position to know what content it placed on their website(s), social media sites, and in marketing materials during the relevant timeframe, and the knowledge it had regarding the Heavy Metals, including lead, and their failure to disclose the existence of the Heavy Metals like lead in their Products to Plaintiffs and consumers, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

   a. **WHO:** Defendants made false statements and material misrepresentations and/or omissions of fact on their products, labeling, marketing materials and in public statements, which include express and/or implicit representations that their Products were and are free of Heavy Metals like lead and were safe for human consumption.

   b. **WHAT:** Defendants falsely and misleadingly, and through the Omissions led consumers to believe that their Products were and are free of Heavy Metals like lead and failed to disclose that the Products contain these materials. Thus, Defendants' conduct deceived Plaintiffs and proposed Class Members into believing that the Products were created, manufactured, and sold with such qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs and proposed Class Members in making their purchasing decisions about the food to eat and provide to their families, yet it continued to pervasively market the Products as possessing qualities they do not possess.

   c. **WHEN:** Defendants made material misrepresentations, false statements and/or the Omissions during the proposed Class and at the time Plaintiffs and proposed Class Members purchased the Products, prior to and at the time Plaintiffs and proposed Class Members made claims after realizing the Products contained Heavy Metals like lead in their Products continuously throughout the applicable Class period.

   d. **WHERE:** Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on their products, labeling, marketing materials and in public statements.

   e. **HOW:** Defendants made material misrepresentations, false statements and/or omissions regarding the presence of Heavy Metals including lead in their Products by making express and/or implicit representations in various marketing materials that their Products were healthy, safe, and made of premium ingredients by omitting any facts in their marketing, labeling, and/or other descriptions of their Products that would inform a consumer as to the presence of Heavy Metals like lead.

   f. **WHY:** Defendants made the material misrepresentations, false statements, and/or Omissions detailed herein for the express purpose of inducing Plaintiffs, proposed

Class Members, and all other reasonable consumers to purchase and/or pay for the Products instead of other brands that did not have similar Heavy Metals like lead, the effect of which was that Defendants profited by selling the Products to many thousands of consumers and faulty and defective Product.

g. **INJURY:** Plaintiffs and proposed Class Members did not receive the benefit of their bargain. They purchased the Products when they otherwise would not have, absent Defendants' misrepresentations, false statements, and/or Omissions. They purchased an unsafe and harmful product that should not be consumed by anyone.

## <u>CLASS ACTION ALLEGATIONS</u>

123. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and all others similarly situated, as members of the following classes against Defendant:

124. All persons who, during the four (4) years prior to the filing of the Complaint, to the present, purchased the Products for household use, and not for resale (the "Class").

125. All persons who, during the four (4) years prior to the filing of the Complaint, to the present, purchased the Products for household use, and not for resale in the State of North Carolina (the "North Carolina Subclass").

126. Excluded from the Class and Subclasses (collectively, "Classes") are Defendant, any of Defendants' parent companies, subsidiaries and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

127. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

128. The members of the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

129. Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

a. Whether Defendants owed a duty of care;

b. Whether Defendants owed a duty to disclose;

c. Whether Defendants knew or should have known that the Products contained or may contain Heavy Metals like lead;

**d.** Whether Defendants failed to disclose that the Products contained or may contain Heavy Metals like lead;

**e.** Whether the claims of Plaintiffs and the Classes serve a public benefit;

**f.** Whether Defendants' packaging is false, deceptive, and misleading based on the Omissions;

**g.** Whether the Omissions are material to a reasonable consumer;

**h.** Whether the inclusion of Heavy Metals like lead in the Products is material to a reasonable consumer;

**i.** Whether the Omissions are likely to deceive a reasonable consumer;

**j.** Whether Defendants had knowledge that the Omissions were material and false, deceptive, and misleading;

**k.** Whether Defendants breached their duty of care;

**l.** Whether Defendants breached their duty to disclose;

**m.** Whether Defendants violated the laws of the State of North Carolina;

**n.** Whether Defendants violated the laws of other States;

**o.** Whether Defendants breached their implied warranties;

**p.** Whether Defendants engaged in unfair trade practices;

**q.** Whether Defendants engaged in false advertising;

**r.** Whether Plaintiffs and members of the Classes are entitled to actual, statutory, treble, and punitive damages; and

**s.** Whether Plaintiffs and members of the Classes are entitled to declaratory and injunctive relief.

130. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

131. Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

132.   Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

133.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would not be feasible for members of the Classes to redress the wrongs done to them.

134.   Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

135.   As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT 1
### NEGLIGENT MISREPRESENTATION
### (On Behalf of the Nationwide Class and North Carolina Subclass)

136.   This claim incorporates by reference all previous allegations in the complaint.

137.   Plaintiffs bring this cause of action on behalf of themselves and the Classes against Defendant.

138.   As alleged herein, Defendants made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging, in the Products' advertisements, and/or on Defendants' website, about the safety, nutrition, and health benefits of the Products.

139.   Defendants described the Products as being safe, nutritious, and healthy in order to sell the Products to Plaintiffs and members of the Class and Subclass and increase their profits.

140.   Plaintiffs and Class Members reasonably relied upon Defendants' representations that the Products were safe, nutritious, and healthy.

141.   Plaintiffs and Class Members suffered economic and other losses because the Products were harmful and contained lead and nickel.

142.   Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

143.   Plaintiffs and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT 2**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and North Carolina Subclass)**

144. This claim incorporates by reference all previous allegations in the complaint.

145. Plaintiffs bring this cause of action on behalf of themselves and the Classes against Defendants.

146. Plaintiffs and Class Members conferred a benefit on Defendants when they purchased the Products, of which Defendants had knowledge about the unhealthy, dangerous, and unsafe inclusion of Heavy Metals like lead.

147. Substantial benefits have been conferred on Defendants by Plaintiffs and the members of the Class through the purchase of the Products. Defendants knowingly and willingly accepted and enjoyed these benefits.

148. Defendants either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Products would not contain Heavy Metals like lead. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

149. Defendants were obligated to disclose the presence of Heavy Metals in the Products because:

   a. Defendants had exclusive knowledge of the presence of Heavy Metals like lead in the Products that were not known or reasonably accessible to Plaintiffs and the members of the Class; and

   b. Defendants actively concealed the presence of Heavy Metals like lead from Plaintiffs and the members of the Class.

150. Defendants' acceptance and retention of the benefits of the payments from Plaintiffs and the members of the Class under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and the members of the Class.

151. Plaintiffs and the members of the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

152. Plaintiffs and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT 3**
**BREACH OF IMPLIED WARRANTY**

**(On Behalf of the Nationwide Class and North Carolina Subclass)**

153. Plaintiffs, individually and on behalf of the Classes, bring this cause of action and hereby adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

154. Defendants are each a merchant and, at all relevant times, has been involved in the manufacturing, distributing, warranting, and/or selling of the Products.

155. The Products are goods as defined by U.C.C. § 2-105, and State U.C.C. provisions and Defendants knows or has reason to know of the specific use for which the Products, as goods, are purchased.

156. The implied warranty of merchantability included with the sale of each Product means that Defendants warrant that the Products are fit for the ordinary purposes for which the Products are used and sold, and are not otherwise injurious to consumers, that the Products would pass without objection in the trade, be of fair and average quality, and conform to Defendants' promises and affirmations of fact. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendants and consumers, which include Plaintiffs and Class Members.

157. There was a sale of goods from Defendants to Plaintiffs and the members of the Classes.

158. As set forth herein, Defendants manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiffs and the members of the Class, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use of being consumed by consumers, including the Plaintiffs.

159. Plaintiffs relied on these implied warranties when they purchased the Products.

160. The Products were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals including lead that do not conform to the packaging.

161. These promises became part of the basis of the bargain between Defendants and Plaintiffs and the members of the Class, and thus constituted implied warranties.

162. Defendants breached their implied warranties by selling Products that contain Heavy Metals like lead.

163. Defendants were on notice of this breach as it was aware of the inclusion of Heavy Metals like lead in the Products as a result of the public investigation and report published by the FDA and the NCDHSS Reports that showed the Products contain Heavy Metals like lead.

164. Privity exists because Defendants manufactured and sold the Products directly to Plaintiffs and the members of the Class.

165. Defendants impliedly warranted to Plaintiffs and the members of the Class that the Products did not contain contaminants such as Heavy Metals like lead by failing to mention or disclose the presence of Heavy Metals like lead while making promises about the quality and nature of the Products, including that their products must meet stringent quality expectations.

166. As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs and the members of the Class suffered actual damages as they purchased the Products that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals like lead.

167. Plaintiffs, on behalf of themselves and the members of the Class, seek actual damages for Defendants' failure to deliver goods that conform to their implied warranties and resulting breach.

## COUNT 4
## VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C.G.S. §§ 75-1.1, *et seq*.
### (On behalf of the North Carolina Class)

168. This claim incorporates by reference all previous allegations in the complaint.

169. Plaintiffs bring this cause of action on behalf of themselves and the North Carolina Class against Defendants.

170. Defendants engaged in commerce, as defined by N.C. Gen. Stat. § 75-1.1.

171. Defendants' material and misleading Omissions failed to disclose that the Products contained, or had a material risk of containing, Heavy Metals like lead.

172. Defendants omitted this material information with the intent to induce consumers like Plaintiffs to purchase the Products.

173. Defendants engaged in deceptive practices in the conduct of its trade or commerce.

174. Defendants' deceptive trade practices significantly affected the public interest.

175. Plaintiffs and the North Carolina Subclass were purchasers of Defendants' Products.

176. Plaintiffs were deceived by Defendants' deceptive trade practices and purchased the Products due to Defendants' deceptive trade practices.

177. The marketing and sale of the Products when their Products contained the Heavy Metals like lead had the capacity or tendency to deceive consumers and did indeed deceive Plaintiffs and members of the North Carolina Subclass.

178. The presence of Heavy Metals like lead in the Products marketed for consumption by Plaintiffs and minor children is material information to consumers like Plaintiffs and the North Carolina Subclass.

179. Plaintiffs and the North Carolina Subclass were induced to purchase the Products by Defendants' marketing, to which all consumers were exposed. Plaintiffs and the Subclass have been injured as a result of their reliance on Defendants' deceptive marketing and sales practices.

180. Plaintiffs and the members of the North Carolina Subclass suffered damages and losses as described above as a result of Defendants' deceptive trade practices.

181. Pursuant to the North Carolina Unfair and Deceptive Trade Practices Act, Plaintiffs and the North Carolina Subclass seek declaratory relief, full refund, actual and punitive damages, statutory damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated, pray for the following relief:

a. Certify this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives and appointing the undersigned as Class Counsel;

b. An order enjoining Defendants from selling the Products until the Heavy Metals like lead are removed or full disclosure of the presence of same appears on all packaging;

c. An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Products;

d. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

e. An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

f. An order requiring Defendants to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

g. An order requiring Defendants to pay all actual and statutory damage permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

**h.** Trebling the compensatory damages of Plaintiffs and the Class pursuant to N.C.G.S. § 75-1.1, *et seq.*;

**i.** Adjudging that Defendants violated the UDTPA;

**j.** An order requiring Defendants to pay punitive damages on any count so allowable;

**k.** An order awarding attorneys' fees and costs to Plaintiffs and the Classes;

**l.** That the costs of this action be taxed to Defendants;

**m.** For a trial by jury on all issues so triable;

**n.** For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 31st day of October, 2023.

*Counsel for Plaintiff*

**MAGINNIS HOWARD**

*/s/ Karl S. Gwaltney*
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
KARL S. GWALTNEY
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    (919) 526.0450
Fax:    (919) 882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com
